FILED

2009 Sep-28  PM 12:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARTHUR LANE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CV 07-B-1544-S** |
| | ) | |
| **A L A B A M A   A I R C R A F T** | ) | |
| **I N D U S T R I E S ,   I N C .   –** | ) | |
| **BIRMINGHAM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

This case is presently pending before the court on defendant's Motion for Summary Judgment.  (Doc. 13.)[1]  Plaintiff Arthur Lane has sued his employer, defendant Alabama Aircraft Industries, Inc. – Birmingham, alleging that defendant discriminated against him on the basis of his race and that it retaliated against him for complaining about discrimination.  Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 13), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___ "], refers to the number assigned to each document as it is filed in the court's record.

# I.  SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  Nevertheless, the

non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988))(emphasis added).

## II.  <u>STATEMENT OF FACTS</u>[2]

Defendant "is a government contractor that repairs and maintains military aircraft." (Doc. 14, Ex. C ¶ 2.)  Aircraft are worked in an assembly-line fashion that involves inspecting and evaluating the aircraft upon arrival and performing scheduled and unscheduled maintenance work and repair in different departments.  (*Id*., Ex. B at 24, 73-75.)  The contracts governing the work provide for specific time frames and schedules in which the work must be completed.  (*Id*. at 58.)  Defendant's business has "had a huge decrease in work" in recent years, which has resulted in a reduction of approximately half the workforce and less overtime work for the remaining workers.  (*Id*. at 37; *id.*, Ex. C ¶ 3; *see also id*., Ex. A at 54.)

---

[2]As required when determining a Motion for Summary Judgment, the court has construed the facts in the light most favorable to plaintiff Teresa Mann, the non-moving party.  All disputed facts are resolved in her favor, and all reasonable inferences arising from those facts are drawn in her favor.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir,. 1997).

Plaintiff is an African-American sheet metal mechanic; he has worked for defendant since 1969.  (Doc. 1 ¶¶ 5,7.)  With 39 years of experience, plaintiff is qualified to do any sheet metal work for defendant.  (*See* doc. 14, Ex. A at 50-54; *id*., Ex. B at 132.)  According to defendant, plaintiff is good at his job, he takes pride in his work, and he is highly thought of as a sheet metal mechanic and employee.  (*Id*., Ex. B at 20-22.)

Plaintiff was one of 32 named plaintiffs in *Burnes v. Pemco Aeroplex*, CV 99-AR-3280-S, a race discrimination hostile-environment case, which was tried in June 2002, and a final judgment in favor of defendant was entered in July 2002.  *Burnes v. Pemco Aeroplex*, CV 99-AR-3280-S, doc. 248 (N.D. Ala. July 1, 2002.)

The Collective Bargaining Agreement ["CBA"] between defendant and the union governs the transfer and overtime procedures for bargaining-unit employees, including plaintiff.  (Doc. 14, Ex. B at 159-60 and ex. 22.)  The CBA allows defendant the exclusive right to transfer employees.  (*Id*., Ex. B, ex. 22 at 2.)  Time worked over eight hours on any shift or on a Saturday or the first eight hours of a holiday are paid at time and a half.  Time worked on Sunday or over eight hours a shift on a holiday is paid at double time.  (*Id*., Ex. B at 80-81.)

 As to overtime, the CBA sets forth a system for posting, requesting, and assigning overtime.   (*Id*., Ex. B, ex. 22 at 54-57.)  Defendant offers overtime work

based on cost considerations and scheduling needs of the contract work. (*Id.*, Ex. B at 57-58.) Generally, except in circumstances where defendant schedules mandatory overtime, overtime availability lists are posted by department, and employees in that department who sign up for overtime and have worked the least amount of overtime to date are given the first choice to work overtime. (*Id.*, Ex. A at 29-35.)

Over the course of his employment with defendant, plaintiff has worked many hours of overtime and has been transferred, voluntarily and involuntarily, among various departments on a number of occasions.

On July 15, 2005, despite being the next up for voluntary overtime by the applicable labor contract, Robert Edinger, a white supervisor, did not allow plaintiff to work overtime and, instead, directed four white employees with less seniority than plaintiff, to perform the work. (*Id.*, Ex. A, ex. 9; *id*, Ex. B at 55-56, 59; doc. 21, Ex. A at 217-23.) Defendant contends Edinger selected the white employees because he did not "want to stop the flow of efficiency and productivity [as to the white employees who had been working on the particular project during regular work hours]. So rather than to work [plaintiff], stop the production and put [plaintiff] in something that he wasn't familiar with, [Edinger] chose to work the other employees." (Doc. 14, Ex. B at 55-56.)

Plaintiff filed a union grievance over this incident. (*Id.*, Ex. A, ex. 8 at 00134.) In response , Edinger stated that "Mr. Lane was not considered to be experienced enough to complete the task in the allotted time." (*Id.*) Defendant ultimately paid plaintiff 24 hours of overtime pay in settlement of his grievance less than two months later. (*Id.* at 00135-36.)

Defendant frequently transfers employees between departments based on the contract work and the employees' skills and abilities. (*Id.*, Ex. B at 152-53, 154-55.)

Plaintiff worked in Department 257 – Major Structures – for several years up to and including 2002. Since that time, defendant has transferred him as follows:

| | |
|---|---|
| July 2002 | From Dept. 257 to Dept. 293 |
| August 2002 | From Dept. 293 to Dept. 257 |
| November 10, 2004 | From Dept. 257 to Dept. 250 |
| March 4, 2005 | From Dept. 250 to Dept. 263 |
| April 27, 2005 | From Dept. 263 to Dept. 250 |
| May 11, 2005 | From Dept. 250 to Dept. 224 |
| August 4, 2005 | From Dept. 224 to Dept. 293 |
| January 13, 2006 | From Dept. 293 to Dept. 250 |
| January 24, 2006 | From Dept. 250 to Dept. 293 |
| March 7, 2006 | From Dept. 293 to Dept. 239 |

(*Id.*, Ex. A at 157; *id.*, Ex. B, ex. 20.)  Plaintiff contends that he was transferred more than other sheet metal mechanics.  (*Id.*, Ex. A at 38-41.)  He testified that "sheet metal [workers are] transferred when the work gets slack."  (*Id.* at 38.)  Indeed, defendant has presented evidence that other sheet metal workers have been transferred as often if not more often than plaintiff.  (*See id*, Ex. B, ex. 20.)  Plaintiff alleges that three of the transfers were discriminatory or retaliatory:

| | | |
|---|---|---|
| July 2002 | From Dept. 257 to Dept. 293 |
| April 27, 2005 | From Dept. 263 to Dept. 250 |
| August 4, 2005 | From Dept. 224 to Dept. 293 |

(Doc. 17 at 16, 22.)  Plaintiff testified that he believed he would have less opportunity to work overtime in Department 293.  (Doc. 21, ex. A at 223-24.)

Plaintiff also alleges that defendant denied his requests to transfer to Department 257.  (*Id.*)  Eight white sheet metal mechanics were transferred to Department 257 after plaintiff's request for a transfer:  William Edwards, Mark Wilson, Tim Warren, David Land, Leonard Alley, Greg Swindal, Tim Bowman, Ronnie Overton, and Crist Gaskey.  (Doc. 21, Ex. A at 239-41.)  Plaintiff contends that Department 257 is the most desirable department because it has the most sophisticated work and often works overtime.  (Doc. 21, Ex. A at 246-48.)  Plaintiff testified, "The jobs that are done in 293, they're dirty, [and they] don't take a lot of

experience." (Doc. 14, Ex. A at 140.) Defendant's Labor Relations Manager, B.J.

Cotton, testified:

> [Department] 293 would be the repair department for sheet metal. . . .
> And so as the line comes – as the aircraft comes up the line, department
> 293 would be working discrepancies that the quality evaluators found
> in shakedown and evaluation.
>           . . .
>
> In 293 there could be panel changes on the wings, there could be splice
> replace done in the bladder tanks, any kind of panel change, small panel
> changes, component replacement, [and] web repairs on both of the
> wings. . . .

(*Id*., Ex. B at 72-73, 77-78; *see id.*, Ex. C ¶ 1.) According to Cotton, Department 257

worked on the KC-135, an Air Force aircraft. (*Id*., Ex. B at 102-03.) He considered

the KC-135 to be easier to work on than the Coast Guard C-130 aircraft, on which

Departments 223, 224, and 250 worked. (*Id*. at 102-03.) He testified that jobs in

Department 257 and Department 293 both require eight hours of sheet metal work

per shift. (*Id*. at 129-30.) Also, he testified that "every sheet metal person would

probably at one time or another be grinding corrosion for some reason," including

those working in Department 257. (*Id*. at 114.)

Plaintiff currently works in Department 239. (*Id*., Ex. A at 81-82.) He has

worked in this department since he voluntarily transferred in March 2006. (*Id*. at 82.)

He has not sought another transfer since that time. (*Id*. at 84.) However, plaintiff

testified that he had tried numerous times to return to Department 257 before settling in Department 239. (Doc. 21, Ex. A at 333-34.)

From January 2003 through March 2006, plaintiff worked 1,243 hours of overtime. (Doc. 14, Ex. C ¶ 6.) Roy Thomas worked 2,098 hours; Edwards worked 1,774 hours; Wilson worked 1,238 hours; Warren worked 794 hours; and Alley worked 664 hours. (*Id*.)

In 2005, plaintiff complained of discrimination and retaliation in writing to Valton Johnson, defendant's Human Resources Director. (*See*, *e.g.*, doc. 14, Ex. A, exs. 13, 15.)[3] He does not know if Johnson talked to anyone about his complaints. (Doc. 21, Ex. A at 222.)

On February 1, 2006, plaintiff filed a Charge of Discrimination with the EEOC, which stated:

> I was hired by [defendant] on February 24, 1969, as a sheet metal mechanic. On August 04, 2005, I was involuntarily transferred to another department over my objection. On or about September 18, 2005, I learned that I was transferred due to my lack of experience, which I deny. I have more than 36 years of aircraft maintenance experience. Management retained . . . White employees with limited experience on the job, whereas I was forced to accept a transfer. On January 12, 2006, I was loaned to my former department for eleven days.

---

[3]Plaintiff complained to Johnson on August 8, 2005, (doc. 14, Ex. A, ex. 13), and October 14, 2005, (*id.*, Ex. 15.) The record also contains plaintiff's complaint letters dated January 27, 2005, (*id*., ex. 12); February 5, 2006, (*id*., ex. 17); and March 7, 2006, (*id*., ex. 16).

> During the period I was on loan, I performed all of the job functions
> management said I did not have enough experience to do.  On January
> 27, 2006, [I] was not allowed to work on a priority rush job, and
> management assigned White employees with less experience to the job.
>
> I believe that I have been discriminated against because of my race,
> Black, and in retaliation for . . . oppos[ing] practices made unlawful
> under Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 1, Ex. A.)  The EEOC issued plaintiff a Notice of Right to Sue in June 2007,

in which it stated that it had "found reasonable cause to believe that violation of the

statute(s) occurred with respect to some or all of the matters alleged in the charge."

(*Id.*, Ex. B.)

On August 23, 2007, plaintiff filed the instant action.  (Doc. 1.)

## III.  <u>DISCUSSION</u>

### A.  RACE DISCRIMINATION

Plaintiff alleges he was discriminated against on the basis of his race by

defendant taking the following adverse employment actions: (1) his two transfers to

Department 293; (2) denial of his request to transfer to Department 257; and (3) his

denial of overtime in July 2005.[4]  (Doc. 17 at 16, 22.)  Because plaintiff relies upon

circumstantial evidence to prove his claims, the court's analysis is governed by the

tripartite framework established by the Supreme Court in *McDonnell Douglas Corp.*

---

[4]Plaintiff mentions an involuntary transfer to Department 250; however, he
does not argue that this transfer was discriminatory.  (*See* doc. 17 at 13-16, 22-23.)

10

*v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).   *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).   The Supreme Court has explained this framework as follows:

> *McDonnell Douglas* and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.  First, the plaintiff must establish a prima facie case of discrimination.  . . .  The burden [then] shift[s] to [the defendant] to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.   This burden is one of production, not persuasion; it can involve no credibility assessment.   [When the defendant offers] admissible evidence sufficient for the trier of fact to conclude that [the plaintiff suffered an adverse employment action for a legitimate, nondiscriminatory reason], the *McDonnell Douglas* framework--with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination vel non . . . .
>
> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.  And in attempting to satisfy this burden, the plaintiff--once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision--must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence.

*Id. at* 142-43 (internal citations and quotations omitted).

Generally, "plaintiff establishes a prima facie case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004)(citations omitted).  Defendant contends that plaintiff cannot establish a prima facie case of discrimination because he cannot establish that he was subjected to any adverse employment action.

In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, plaintiff alleges the following adverse employment actions:

> [Plaintiff] has established that being twice involuntarily transferred to Department 293, where dirtier, less prestigious work is performed, is an adverse employment actions.  [Plaintiff] has also established that being denied voluntary transfer back into Department 257, where highly skilled and more prestigious work is performed, is an adverse employment action.  Finally, [plaintiff] has established that being denied overtime to which he was entitled by contract and was not paid for over two months, after successfully filing a grievance through the union, is also an adverse employment action.[5]

(Doc. 17 at 16.)  In his Complaint, plaintiff alleges that he was wrongfully denied the opportunity to work overtime in January 2006 when defendant denied his request to transfer to Department 257.  (Doc. 1 ¶ 12.)  However, in opposition to defendant's

---

[5]The record reflects that plaintiff was denied an opportunity to work overtime in July 2005, and that he was later paid for this missed overtime opportunity in October 2005.  (Doc. 14, Ex. A, ex. 8.)

Motion for Summary Judgment, he does not contend that defendant's alleged wrongful denial of overtime work in January 2006 was an adverse employment action.  (Doc. 17 at 16.)  Therefore, the court finds that plaintiff has abandoned his claim for relief based on the lost opportunity for overtime in January 2006.

As for plaintiff's remaining claims, defendant contends that these employment decisions are not actionable as adverse employment actions.  The Eleventh Circuit has held that an adverse employment action is an essential element of claims of discrimination and retaliation.  *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001).  "[T]o prove [an] adverse employment action . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment," and that "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Id*. at 1239.

Whether an employer's decision affecting an employee constitutes an actionable adverse employment action turns on whether a reasonable person would have found the decision to be adverse to his employment.  Therefore, a plaintiff must show that "a reasonable person in [his] position would have found [the decision] to be adverse under all the facts and circumstances."  *Doe v. DeKalb County School*

13

*District*, 145 F.3d 1441, 1453 (11th Cir. 1998). Among the facts and circumstances affecting whether the change is considered "adverse" are whether the change results in "lesser pay, responsibilities or prestige," and whether the change would "impede an employee's professional growth or advancement." *Id*. at 1452. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)(quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996))

Plaintiff contends that this court must follow the standard set forth in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 71 (2006), to determine whether the decisions at issue were "materially adverse." (*See* doc. 17 at 12.) However, the Supreme Court specifically limited its decision in *Burlington Northern* to employment actions alleged to be retaliatory. *Burlington Northern*, 548 U.S. at 67. The Eleventh Circuit has noted this limitation, stating, "It should be noted, however, that while the new standard enunciated in *Burlington* applies to Title VII retaliation claims, it has no application to substantive Title VII discrimination claims; the prior standard remains applicable to such claims." *Crawford v. Carroll*, 529 F.3d

961, 974 n.14(11th Cir. 2008); *see also Butler v. Alabama Dept. of Transp.* 536 F.3d 1209, 1214 and n.2, 1215-17 (11th Cir. 2008)(noting *Burlington* standard applied to retaliation claim and applying *Davis* standard to race discrimination claim).

### 1. Overtime – July 2005[6]

Defendant contends that plaintiff did not suffer an adverse employment action with regard to denial of the opportunity to work overtime in July 2005 because he has been paid for the unworked overtime as a resolution of his grievance.

Plaintiff filed a grievance, in which he complained that he was not given the opportunity to work overtime on July 16, 2005 and July 17, 2005. (Doc. 14, Ex. A, ex. 8 at 00134.) As "settlement of the [his] grievance," plaintiff received pay for 24 hours of overtime he did not work. (*Id.* at 00135.) The court finds the fact that plaintiff received payment for work he did not perform is significant. Indeed, the court finds no reasonable employee would consider denial of the opportunity to work overtime was "a serious and material change in the terms, conditions, or privileges

---

[6]The court notes that plaintiff filed his EEOC charge on February 1, 2006. Therefore, his Title VII claim based on the July 16-17, 2005 denial of the opportunity to work overtime is time barred. 42 U.S.C. § 2000e-5(e)(1); *see Ledbetter v. Goodyear Tire and Rubber Co., Inc.*, 421 F.3d 1169, 1178 (11th Cir. 2005)("For claims arising in so-called 'non-deferral' states, such as Alabama, to be timely, the applicable charge must have been filed within 180 days 'after the alleged unlawful employment practice occurred.' § 2000e-5(e)(1).").

of employment" if the employee, after complaining, was paid for overtime work[7] he never had to perform.  *See  Pennington  v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir.2001)("[W]hen an employee loses pay or an employment benefit from [an employer's decision], courts have held that the employment action is not adverse . . . when the action is rescinded and backpay is awarded.")(citing *Dobbs-Weinstein v. Vanderbilt University*, 185 F.3d 542, 544 (6th Cir. 1999); *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998));  *Lindsey v. Burlington Northern Santa Fe Railway Co.*, 266 F. Supp. 2d 1338, 1344 (N.D. Ala. 2003)("[A]lthough [plaintiff] was furloughed when other less senior males were working, this ultimately resulted in no tangible harm or change in the terms, conditions or privileges of employment, as she was compensated as if she had worked during that time.  Because she did not suffer any change in her employment status, much less any serious and material change, she did not suffer an adverse employment action.  Therefore, she cannot make a prima facie case of sex discrimination with respect to the incidents giving rise to the grievances.")(citing *Pennington*, 261 F.3d at 1267; *Crittenden v. Int'l Paper*

---

[7]Generally, the court notes that one of the purposes of overtime wages is to discourage employers from requiring "oppressive working hours" from employees. *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)(noting that "the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay.")(internal quotations and citations omitted).

*Co. Wood Prods. Div.,* 214 F. Supp. 2d 1250, 1254 (M.D. Ala. 2002)); *see also*

*Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 301 (7th Cir. 2004)("A short delay

in overtime payment is an inconvenience, as are transfers without any reduction in

pay or status.")(citations omitted).

The court finds that plaintiff cannot establish that defendant's decision denying

him the opportunity to work overtime in July 2005 was an adverse employment

action.   Therefore, plaintiff's race discrimination claims with regard to this

employment decision are due to be dismissed.

## 2. Transfers

Defendant contends, "All of the transfers at issue in this case have been lateral

and resulted in no change of [plaintiff's] job classification."  (Doc. 15 at 16.)

Therefore, it contends that the transfers and failure to transfer are not adverse

employment actions.  (*Id*. at 18-19.)  Plaintiff contends that work in Department 293

is dirtier, requires less experience, and is performed primarily by African-American

employees.  (Doc. 17 at 13.)  Moreover, he argues that work in Department 257

requires more experience and is more prestigious.  Therefore, plaintiff contends

defendant's decisions transferring him to Department 293 and not transferring him

to Department 257 constitute adverse employment actions.  (*Id*. at 16.)

The Eleventh Circuit has held, "In the vast majority of instances, . . . we think an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection afforded by Congress in Title VII's anti-discrimination clause – especially where . . . the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001). This is because "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* at 1244. Therefore, a claim based on a change in work assignments is actionable only in an "unusual instance" where the change was "so substantial and material that it . . . alter [ed] the 'terms, conditions, or privileges' of employment." *Id.* at 1245 (citing *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077-78 (11th Cir. 1996)); *see also Grimsley*, 284 Fed. Appx. at 608-09.

Plaintiff contends that two involuntary transfers to Department 293 and denial of his requests to transfer back to Department 257 were materially adverse employment actions because the work in Department 257 was more prestigious and the work in Department 293 was dirtier. (*See* doc. 17 at 13-16.) Plaintiff testified, "The jobs that are done in 293, they're dirty, [and they] don't take a lot of

18

experience." (Doc. 14, Ex. A at 140.)  The court finds that this evidence is not sufficient to allow a reasonable jury to find that jobs in Departments 257 and  293 were so different that assignment to Department 293 and failure to assign to Department 257 were substantial and material changes to the terms, conditions, or privileges of plaintiff's employment.  Defendant's decision to transfer plaintiff did not change his compensation, title, benefits, or shift.  Plaintiff contends that he had less opportunity to work overtime because of the transfers, but the record before the court does not support this claim.[8]  The fact that plaintiff found the work less desirable and prestigious is not sufficient to substantially and materially alter his terms and conditions of employment.

The court finds that plaintiff cannot establish defendant's decisions transferring him to Department 293 and refusing to transfer him to Department 257 were adverse employment actions.  Therefore, plaintiff's race discrimination claims with regard to these employment decisions are due to be dismissed.

---

[8]The record contains evidence of the amount of overtime worked by particular employees, (doc. 14, Ex. C ¶ 6), and evidence of overtime by Department, (*id*., Ex. B, ex. 13).  However the record does not contain information regarding the number of employees per department; therefore, the court cannot determine if certain departments offered more overtime per employee.

## B.  RETALIATION

In order to establish a prima facie case of retaliation in violation of Title VII and Section 1981, plaintiff must establish: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal relationship between the protected expression and the adverse action.  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n.52 (11th Cir. 2008).  To show an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 , 68 (2006)(internal quotations and citations omitted).  "The causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)(quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998)(quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993)))(internal quotations omitted).  Plaintiff must prove, "that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008)(internal quotations and citations omitted).  "The

cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  *Clark County School Dist. v. Breeden*,  532 U.S. 268, 273-74 (2001)(quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

Judgment in the *Burnes* case was entered on July 1, 2002.  Although plaintiff alleges his transfer to Department 293 in 2002 was retaliatory, such claim is time-barred.[9]  Moreover, judgment in the *Burnes* case is too remote to provide a causal connection based on temporal proximity for any of the other alleged adverse employment actions.  Therefore, any retaliation claims based on plaintiff's 2002 transfer or his participation in *Burnes* are due to be dismissed.

Also, the court finds that plaintiff cannot establish a causal connection between plaintiff's complaint letters to Johnson and the alleged adverse employment actions. Therefore, the court pretermits discussion of whether plaintiff's alleged adverse employment actions are actionable.

Plaintiff argues –

---

[9]*See Jones v. R.R. Donnelley & Sons Co*., 541 U.S. 369, 382 (2004)(statute of limitations for § 1981 claims "made possible by a post-1990 enactment" is four years); 42 U.S.C. § 2000e-5(e).

Defendant fails to mention any of the letters written to the Defendant's Human Resources Director, Valton Johnson, by [plaintiff], complaining of ongoing discrimination and retaliation. These were certainly considered by the EEOC in its determination finding cause to believe that [plaintiff] had suffered retaliation. In fact, some of the transfers in question occurred shortly after these letters were written. Certainly, [plaintiff] was under the impression that Mr. Johnson had taken action on the basis of his letters, ***presumably*** by talking with the supervisors involved. Defendant has no evidence that this is not the case. As a result, there is certainly substantial evidence in the record that the adverse employment actions about which [plaintiff] complains are not entirely unrelated to his protected activity. [Plaintiff] has, therefore, satisfied the third element of a *prima facie* case of retaliation, as well.

(Doc. 17 at 28-29 [emphasis added].)   Plaintiff's presumption, however, is not evidence that the decision makers – none of whom was Valton Johnson – were aware that plaintiff had complained to Johnson about race discrimination. *See Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1355 (11th Cir. 1999)(citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)).   Plaintiff has the burden to show the decision-makers knew of his protected activity at the time the decisions at issue were made. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)(citing *Goldsmith*, 996 F.2d at 1162).   "And while [the Eleventh Circuit has] held that awareness of protected expression may be established based on circumstantial evidence, [the] cases have required plaintiffs to show a defendant's awareness with more evidence than mere curious timing coupled with speculative

theories.  *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)(citing *Goldsmith*, 996 F.2d at 1163).

Plaintiff complained to Johnson on January 27, 2005, August 8, 2005, and October 14, 2005.  (Doc. 14, Ex. A, exs. 12, 13, 15.)  He was denied overtime on July 16 and 17, 2005; and defendant transferred him on April 27, 2005, August 4, 2005, January 13, 2006, and January 24, 2006.  (*Id*., Ex. B, ex. 20.)  Plaintiff has not shown that the decision-makers involved in any of these employment decisions knew about his complaint letters to Johnson.  Therefore, plaintiff cannot show a causal connection between his complaint letters to Johnson and the alleged adverse employment actions. Plaintiff's retaliation claims are due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 28th day of September, 2009.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

23